**NOT FOR PUBLICATION**                                                          **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                              :
ROCHETTE Y. SCOTT,                            :
                                              :
            Plaintiff,                        :         Civil Action No. 07-6033 (JAP)
                                              :
      v.                                      :         **OPINION**
                                              :
MICHAEL J. ASTRUE, COMMISSIONER               :
OF SOCIAL SECURITY,                           :
                                              :
            Defendant.                        :
_____:

PISANO, District Judge.

        Before the Court is the appeal of Rochette Yevette Scott ("Scott") from the final

decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her request for Disability Insurance Benefits ("DIB").  The Court has jurisdiction to

review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without

oral argument.  *See* Fed. R. Civ. P. 78.  For the reasons below, the Court finds that the record

provides substantial evidence supporting the Administrative Law Judge's ("ALJ") decision

that Scott retained the residual functional capacity to perform work, not involving dangerous

machinery or heights, and thus, was not under a disability as defined in the Social Security

Act.

## I.     BACKGROUND

Scott was born on March 28, 1967 and, at the time of her hearing before the ALJ was 40 years old, five feet one inch tall and weighed about 125 pounds. (Administrative Record ("R.") at 182).  She has a high school education.  (R. at 182).  Her previous work history includes work as a home health care aide, a bus aide and a warehouse worker.  (R. at 127).  According to the record, Scott has not worked since June 1, 2004, when she briefly worked as a home health aide.  (R. at 82).  She alleges disability beginning July 1, 2003.  (R. at 82).

### A.  Procedural History

Scott filed an application for DIB[1] on June 3, 2005, alleging that she became disabled on July 1, 2003 due to epileptic seizures, hypertension, and anxiety.  (R. at 62-63).  The Social Security Administration denied Scott's claims both initially and upon reconsideration. (R. at 29-40).  Upon Scott's request, a hearing was held before ALJ Richard L. De Steno on March 20, 2007, during which Scott and her roommate, Rachel Goode, appeared to provide testimony.  (R. at 41, 180-197).  On May 2, 2007, ALJ De Steno issued a written decision denying Scott's claim.  (R. at 10-25).  A request for review by the Appeals Council was denied on October 25, 2007, making the ALJ's decision the Commissioner's final decision on the issue of Scott's request for benefits.  (R. at 3-5).

Thereafter, Scott filed her complaint in this matter alleging that ALJ De Steno's decision was not based on substantial evidence.  Specifically, Scott argues that the ALJ's findings at step two, four and five of the requisite five-step analysis were not supported by

---

[1] Scott is insured for DIB through December 31, 2006.  (R. at 65).

substantial evidence.  As to relief, Scott seeks reversal of the Commissioner's Order denying benefits.

**B.  <u>Factual History</u>**

1**.  Scott's Previous Employment**

Scott's past relevant work history includes home health care aide work. (R. at 182). She testified at the hearing before the ALJ regarding her job, explaining that while caring for the elderly, she made sure they had food, gave them medicine, bathed them, and attended to their needs.  (R. at 182-83).  As a home health aide, she was on her feet for most of the day and occasionally lifted patients while administering care.  (R. at 182).  Scott also worked as a bus aide for two years.  (R. at 183).

2.  **Scott's Daily Activities**

Scott testified at the hearing that she lived in an apartment with her friend, Rachel Goode.  (R. at 186).  According to Scott, she could not manage her finances herself and needed her roommate's assistance.  (R. at 190, 194).  Scott testified that she does not read for fear that, due to her condition, she will not remember what she has read.  (R. at 191). However, she also stated in an agency questionnaire that she reads the newspaper daily and that reading is one of her hobbies.  (R. at 91, 95, 96, 191).  In the questionnaire she completed regarding her daily activities, Scott indicated that during the day, she would mostly read the newspaper, take medication, and watch TV.  (R. at 91).  She would also feed and walk her dogs and occasionally care for her grandson who visited every other weekend. (R. at 92).  Scott stated that she would do chores both indoors and outdoors and frequently go outside.  (R. at 94).  Scott also claims that because of her disability, she needs constant supervision while preparing meals and performing other household chores.  (R. at 93-94).

### 3. **Scott's Medical History**

Scott's medical conditions include a seizure disorder, hypertension, anxiety disorder, depression, and marijuana dependence.  Scott reported that her first seizure occurred July 1, 2003.  (R. at 84).  According to Scott, the seizure required hospitalization for several days.  (R. at 84).  Scott stated that she has had several other seizures since that time that have required hospitalization.  (R. at 84).

Scott has been prescribed medication for her seizures and hypertension.  Her medications included anticonvulsant Phenytoin 600 mg. daily and antihypertensive medication Lotrel 5/20 mg. daily.  (R. at 127).  Additionally, according to Dr. Welles' medical report, Scott has history of illicit drug use.  (R. at 127).  The report indicates that Scott has had a dependence on marijuana since June 2004.  (R. at 127.)

At the request of DDS, Scott underwent a psychiatric consultative evaluation on September 22, 2005 by Dr. Timothy Welles.  Dr. Welles diagnosed Scott with an adjustment disorder with mixed anxiety, depressed mood, cannabis dependence, amnestic disorder, hypertension and epilepsy.  (R. at 129).  He recommended individual psychological therapy. (R. at 129).

Additionally, in a Mental Residual Functional Capacity Assessment, the state agency psychological consultant reported on October 4, 2005 that Scott was moderately limited in her ability to understand, remember and carry out detailed instructions, interact appropriately with the general public and set realistic goals or make plans independently of others.  (R. at 138).  State agency consultants, Dr. Wing and Dr. Altmansberger, found that Scott was not significantly limited in her abilities to remember locations and work-like procedures, understand, remember and carry out short and simple instructions, maintain attention and

4

concentration for extended periods, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine with special supervision, work in coordination with others, make simple work-related decisions, complete a normal workday or workweek, perform at a consistent pace without an unreasonable number or length of rest periods, get along with co-workers, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in a work setting, and travel to unfamiliar places or use public transportation.  (R. at 138-39).  Dr. Wing further noted that Scott was well groomed, her speech was clear and fluent, her thinking was coherent and goal directed, her intellectual function was average, and that Scott was capable of performing everyday chores like taking public transportation and getting along with others.  (R. at 140).  Scott indicated to Dr. Wing at the examination that her hobbies included bicycling and going to the park with family and friends.  (R. at 140).

Scott's medical records show one emergency room record from Raritan Bay Medical Center, on October 15, 2005 for right ankle pain.  (R. at 172).  Upon examination, she was diagnosed with a small ankle joint effusion and was discharged the same day.  (R. at 172).

## III.  LEGAL STANDARD FOR DISABILITY BENEFITS

### 1.  Disability Defined

To be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes only if his physical and mental impairments are "of such severity that he is not only unable to do his previous work, but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

> 2. **The Five-Step Analysis for Determining Disability**

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(b)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id.*  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") sufficiently permits him to resume his past relevant work.  20 C.F.R. § 404.1520(e)-(f).  Again, the burden lies with the claimant to show that he is unable to perform his past work.  *Fargnoli v. Halter*, 247 F.3d 34, 39 (3d Cir. 2001).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not

6

entitled to disability benefits.  *Id*.  Should the claimant be unable to return to his previous

work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant

can perform other substantial, gainful work.  20 C.F.R. § 404.1520(g); *Kangas v. Bowen*, 823

F.2d 775, 777 (3d Cir. 1987).  If the Commissioner cannot satisfy this burden, the claimant is

"disabled" and will receive social security benefits.  *Yucker*t, 482 U.S. at 146-47 n.5.

### 3.  **The Record Must Provide Objective Medical Evidence**

Under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., a claimant is

required to provide objective medical evidence in order to prove his disability.  42 U.S.C. §

423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he

furnishes such medical and other evidence of the existence thereof as the Commissioner of

Social Security may require.").  Accordingly, a plaintiff cannot prove that he is disabled

based solely on his subjective complaints of pain and other symptoms.  *See Green v.*

*Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without

more, do not in themselves *constitute* disability.").  A claimant must provide medical

findings that show that he has a medically determinable impairment.  *See id*.; *see also* 42

U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment").

Moreover, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness,

or nervousness, will not be found to affect [one's] ability to do basic work activities unless

medical signs or laboratory findings show that a medically determinable impairment(s) is

present."  20 C.F.R. § 416.929(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999)

(rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the

7

ALJ had made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant's benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## IV.    STANDARD OF REVIEW

The district court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. § 405(g); 1383(c)(3) ("The final determination of the Commissioner . . . shall be subject to judicial review as provided in section 405(g) . . . ."); *Williams*, 970 F.2d at 1182.  "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs*., 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will be "substantial."  For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusions.'

*Wallace v. Sec'y of Health & Human Servs*., 722 F.2d 1150, 1153 (3d Cir. 1983)  (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality. See *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)). The Commissioner has a corresponding duty to facilitate the court's review: "Where the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

## V. THE ALJ's DECISION

After reviewing all of the evidence in the record, the ALJ concluded that Scott was not disabled within the meaning of the Social Security Act. (R. at 24). In his decision, the ALJ properly applied the requisite sequential evaluation and considered all relevant evidence put before him. (R. at 15-25). The decision includes evaluation of Plaintiff's subjective complaints as well as the various medical reports related to her medical conditions.

At the outset of his five-step analysis, the ALJ found that Scott had not engaged in any substantial gainful activity since the alleged onset of her disability, and, therefore, step one was satisfied.  (R. at 16).  At step two, the ALJ concluded that the evidence showed that Scott had a severe impairment involving a seizure disorder, but did not have severe impairments or limitations from plaintiff's alleged history of depression.  (R. at 16). Although Scott was diagnosed with adjustment disorder with mixed anxiety and depressed mood, the ALJ found that there was no evidence to establish the existence of a severe impairment.  (R. at 16).  Specifically, the ALJ noted there was no evidence of consistent or significant treatment to prove that Scott was significantly limited in her ability to perform daily work-related activities.  (R. at 16).  Furthermore, the ALJ emphasized that according to the record, Scott possessed only "mild" restrictions of activities of daily living, "mild" difficulties maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence or pace.  (R. at 16, 160).  In addition, Scott had "never" experienced repeated episodes of deterioration.  (R. at 16, 160).

Based on the lack of record evidence of any direct seizure-related symptoms, the ALJ found that Scott's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that her statements concerning the intensity, duration and limiting effects of those symptoms were not entirely credible.  In particular, the ALJ pointed to Social Security Ruling 87-6, indicating that Scott's non-compliance with treatment recommendations precluded a finding of "disability" on the basis of her alleged seizures, since there was no medical basis for excusing Scott's admitted failure to treat her alleged seizures. (R. at 21).  The ALJ noted that there was no good explanation for Scott's

failure to adhere to the prescribed treatment, which could have restored her ability to work. (R. at 21).

At step three of the analysis, the ALJ determined that Scott's impairment or combination of impairments did not meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). (R. at 16). According to the ALJ, not only were Scott's limited physical examinations directly related to her seizure disorder normal, there was a lack of record evidence showing that the seizures occurred at listing-level frequency. Specifically, he noted that the Listing of Impairments sets forth evaluation criteria, such as the type, frequency, duration, and sequence of seizures. With regard to Scott's seizure disorder, the ALJ indicated that the record failed to show listing-level frequency with major motor seizures occurring more frequently than once a month, or minor motor seizures occurring more frequently than once weekly. Additionally, the ALJ found that although Scott alleged having experienced seizures requiring inpatient admissions to Bayshore Community Hospital and Raritan Bay Hospital, there was no evidence to support these allegations since the treating sources failed to respond to the ALJ's requests for information. (R. at 16). Significantly, the ALJ noted that while the only emergency room abstract in the record dealt with a visit for a sprained ankle and was entirely unrelated to Scott's seizure disorder. (R. at 17). Hence, the evidence failed to establish that her disorder met or equaled the level of severity contemplated in the Listing of Impairments.

Progressing to step four, the ALJ found that Scott retained a residual functional capacity ("RFC") to perform work at all exertional levels, not involving heights or dangerous machinery. (R. at 17). Under Social Security Ruling 96-6p, the ALJ found the State Agency

physicians' conclusions that the Claimant did not have any exertional limitations was consistent with the evidence in the record.  Based upon the ALJ's determination of Scott's RFC, he found that Scott was unable to perform any past relevant work. (R. at 23).  However, considering Scott's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Scott could perform.  (R. at 23).  Because the ALJ found that there were a substantial number of jobs in the national economy she could perform, Scott was not disabled as defined in the Medical Vocational Guidelines.  *See* 20 C.F.R. §§ 404.1560(c) and 404.1566.  (R. at 24).

## V.  LEGAL DISCUSSION

On appeal, Scott challenges the ALJ's decision primarily on three grounds: (1) the ALJ's nullifications omitted evidence of a severe mental impairment, (2) the ALJ improperly evaluated the RFC assessment, and (3) the ALJ improperly determined plaintiff's occupational base.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

### A.  The ALJ's Finding that Scott Did Not Suffer From a Severe Mental Impairment

Scott argues that the ALJ erroneously determined that Scott's impairments did not meet or medically equal any of the impairments listed in the Listing of Impairments at the third step of the sequential analysis.

First, the Court notes that Plaintiff has the burden to provide evidence demonstrating that his impairments were of sufficient severity to meet or equal an impairment in the Listing of Impairments.  *See Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).  Additionally, in assessing whether there is a severe impairment, an ALJ must consider whether the objective evidence demonstrates that

12

the claimant exhibits more than a slight abnormality, which has more than a minimal effect

on the claimant's ability to work. *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546-47 (3d

Cir. 2003).

To show that her impairment was severe, Scott had to present medical evidence

demonstrating that she possessed an impairment that was more than a slight abnormality.

*Id.* Scott failed to provide sufficient evidence to substantiate her claim that she suffered

from a severe mental impairment or limitation. As such, the ALJ found there was no

evidence that Scott's depression was a severe impairment.

In fact, there is substantial evidence to support the ALJ's findings. In the objective

clinical findings of consulting examiner Dr. Timothy Welles, Dr. Welles diagnosed Scott

with an adjustment disorder with mixed anxiety and depressed mood, and stated that Scott

did "not deal appropriately with stress," which Scott argues substantiates her severe

impairment claim. (R. at 129). However, as the ALJ noted, Dr. Welles' diagnosis was

based solely on Scott's allegations and not on Dr. Welles' objective findings. Because the

ALJ did not find that Scott's allegations were entirely credible, and Dr. Welles' diagnosis

was solely based on those allegations and not on any objective findings, the ALJ properly

assigned little weight to Dr. Welles' opinion.

Additionally, Dr. Welles' diagnosis revealed that Scott was cooperative and her

manner of relating was adequate. (R. at 128). Moreover, Scott's mental status examination

revealed her thought process was coherent and goal directed, with no evidence of

hallucinations, delusions, or paranoia. (R. at 128). Her sensorium was clear, and Scott was

fully oriented to person, place, and time. (R. at 128). Her speech and thought content were

also appropriate, her affect was of full range, and Scott's attention and recent memory skills

13

were intact. (R. at 128). Furthermore, Dr. Welles asserted that Scott's intellectual functioning was average and that she showed good insight and judgment. (R. at 129.) Based on all of the objective clinical findings from Dr. Welles' psychiatric consultative examination, the ALJ reasonably concluded that there was no substantial evidence that Scott suffered from a severe mental impairment or limitation.

Additional evidence supports the ALJ's finding that Scott did not suffer from a severe mental impairment or limitation. Drs. Richard Altmansberger and George Wing's assessments indicated that Scott possessed only "mild" restrictions of activities of daily living, "mild" difficulties in maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence or pace. (R. at 138-40, 150-60). They also concluded that Scott "never" experienced repeated episodes of deterioration. *Id.* The consultants' medical assessments that Scott experienced "mild" limitations affirm that her psychiatric impairment is not severe. *See* 20 C.F.R. § 404.1520a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, [the Commissioner] will generally conclude that [her] impairment is not severe."). Furthermore, the opinions of non-examining consultants may constitute substantial evidence in support of the ALJ's findings. 20 C.F.R. § 404.1527(f)(2)(i); *Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995), *aff'd per curiam* 85 F.3d 611 (3d Cir. 1996) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995). Thus, the State agency consultants' opinions that Scott possessed only "mild" limitations in the first three functional areas and "none" in the fourth area was correctly relied upon by the ALJ in finding there was no substantial evidence of a severe mental impairment or limitation.

14

The ALJ reasonably gave little weight to the State agency consultant's opinions set forth in Section I of the "Mental Residual Functional Capacity Assessment" ("MRFC") form and sufficiently explained the basis for his finding.  The MRFC asserts that Scott possessed "moderate" limitations in four areas of mental functioning.  However, as the ALJ pointed out, there are contradictions in the State agency consultants' assessments in Section I and the record evidence, including Dr. Welles' objective clinical findings, as well as the State agency medical consultants' own reports noting only "mild" limitations in the first three functional areas and "none" in the fourth area.  (R. at 23, 140, 160.)  As the ALJ noted, State agency consultants' opinions are given weight insofar as they are supported by record evidence.  *See* SSR 96-6p.  Because there was no evidence to support part of the State agency consultants' opinions, it was proper that the ALJ gave little weight to them.

Finally, the ALJ's finding that Scott did not have a severe mental impairment is further supported by her lack of treatment and own admissions.  The fact that Scott did not seek any treatment for her depression is inconsistent with Scott's own report of her daily activities.  She fails to cite to anything in the record that shows she suffered more than a slight abnormality having more than a minimal effect on her ability to work. Also, as confirmed by the State agency medical consultants' reports, Scott's medical history reveals no records of psychiatric hospitalization or outpatient treatment.  (R. at 140).  In fact, Scott even admitted to Dr. Welles that she had no history of psychiatric outpatient care or hospitalization.  (R. at 127).  However, Scott admitted that she frequently went to the park, used public transportation, and enjoyed socializing, shopping, bicycling, and traveling.  It follows that Scott's statements could not reasonably be accepted as consistent with the

objective medical evidence.  Therefore, the record evidence sufficiently supports the ALJ's findings at the second step of the sequential evaluation.

### B.   The ALJ's Consideration of Scott's Residual Functional Capacity

Another considerable part of Scott's argument is her challenge to the ALJ's assessment of her ability to work at all exertional levels, not involving exposure to heights or dangerous machinery.  Specifically, she asserts that her depression and seizure disorder impose non-exertional limitations that significantly impact her ability to perform other work in the national economy.  This argument fails because the ALJ adequately relied on objective clinical findings of record in concluding that Scott retained the residual functional capacity to work at all exertional levels, not involving exposure to heights or dangerous machinery.

In evaluating Scott's RFC, the ALJ first noted that the medical evidence in the record consists of only one emergency room record from Raritan Bay Medical Center, where Scott was diagnosed with an ankle sprain.  She was discharged the same day with her condition at the time of discharge as noted to be "improved." (R. at 167).

Furthermore, there is substantial evidence to support the ALJ's conclusions regarding Scott's RFC.  Dr. Lathan, the consulting physician, opined in 2005, that plaintiff was capable of performing work at all exertional levels, not involving exposure to heights and dangerous machinery. (R. at 121-126).  His opinion supports the ALJ's conclusion regarding Scott's RFC assessment.  For example, Dr. Lathan noted that Scott's gait and stance were normal.  (R. at 122).  He further observed that Scott's physical examination was fully normal, including her neck, chest, lungs, heart, and abdomen.  (R. at 122).  Scott's musculoskeletal examination revealed full range of motion in her cervical and lumbar spine,

shoulders, elbows, forearms, wrists, hips, knees, and ankles.  (R. at 122-23).  There were

also no signs of sensory deficits in Dr. Lathan's neurological examination, no muscle

atrophy, and finger dexterity was intact, with full grip strength of 5/5, bilaterally. (R. at 122-

23).  Dr. Lathan's examinations moreover revealed a normal EKG and a negative chest x-

ray.  (R. at 123, 125-26).

Within her challenge to the ALJ's RFC assessment, Scott asserts subjective

statements as to pain caused by her seizures and depression.  As noted earlier, the ALJ

found that the medical evidence, however, did not support her assertions.  An individual's

claims as to pain or symptoms alone are not conclusive; rather there must be medical

findings that reveal the existence of a medical condition, which considered with all the

evidence, demonstrates a disability.  20 C.F.R. § 404.1529(b).  Here, there is substantial

evidence to support the ALJ's conclusion.  First, Scott's complaints were not entirely

consistent with the clinical findings and there was no medical evidence to support Scott's

allegations of disabling symptoms and limitations. Due to the want of corroborating medical

evidence, the Court finds that the ALJ reasonably concluded that Scott's allegations are not

persuasive. Additionally, Scott's failure to comply with treatment was correctly considered

by the ALJ in assessing credibility.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p.  Despite

Scott's allegations regarding her numerous seizures, her failure to treat her seizure disorder

during the relevant period as well as her inconsistent statements concerning the use of illicit

drugs undermines her credibility.  See *Pereira v. Comm'r of Soc. Sec.*, No. 08-3897, 2009

U.S. Lexis 39324, at *8 (D.N.J. May 7, 2009).

Moreover, Scott's own statements directly conflict with the extent to which she

claims her impairments have limited her ability to work or perform daily activities. While

Scott testified that she does not read and cannot cook, she also reported that her daily activities consisted of reading, caring for her grandson and pets.  (R. at 95-96). Additionally, Scott denied any illicit drug use in her examination with Dr. Lathan, however, she reported to Dr. Welles that she had a marijuana dependence since 2004.  (R. at 121, 127).  In light of the substantial evidence, the Court finds that the ALJ reasonably decided that Scott's allegations of total disability were lacking in credibility.

> **C.  The ALJ's Determination of Scott's Ability to Perform Other Work in the National Economy**

The Court rejects Scott's objections to the ALJ's method of determining her occupational base given her non-exertional limitations.  She bases this challenge upon the holdings of the Third Circuit in *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000).  Scott argues that the *Sykes* holding mandates the ALJ to rely upon vocational expert testimony rather than the Medical Vocational guidelines for determining the occupational base for a person with non-exertional limitations.  The Court finds this argument to be without merit.

First, the Court notes that the Commissioner can satisfy its burden of proof regarding the availability of jobs in the national economy via rulemaking rather than on a case-by-case basis.  *Heckler v. Campbell*, 461 U.S. 458 (1983).  The Medical Vocational guidelines may be used as a framework when non-exertional limitations are taken into account.  *Allen v. Barnhart*, 417 F.3d 396, 401 (3d Cir. 2005).  Second, the SSA's Acquiescence Ruling, AR 01-1(3), which renders the *Sykes* holding inapplicable where the ALJ references an SSR in his opinion lends further support for the ALJ's decision not to rely upon vocational expert testimony.  The ALJ's specific reference to SSR 85-15 in finding that Scott's non-exertional limitations did not compromise her ability to perform work at all exertional levels, was therefore appropriate.  As the ALJ noted, SSR 85-15 expressly states that "[a] person with a

18

seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels." (R. at 24).

Therefore, the ALJ adequately considered Scott's vocational factors along with her residual functional capacity for all exertional levels, not involving exposure to heights or dangerous machinery at step five of the sequential analysis.  20 C.F.R. § 404.1560, 404.1563-65.  The ALJ's findings that plaintiff had a high school education, was considered a "younger person" during the relevant period, in addition to the ALJ's RFC determination was consistent with the framework of Medical Vocational rule 204.00. (R. at 23-24.)  20 C.F.R. § 404.1563(c), Subpart P, Appendix 2.  Therefore, substantial evidence supports the ALJ's determination that Scott was not disabled at the fifth step of the sequential evaluation.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Scott's request for DIB benefits, and thus affirms the Commissioner's final decision.  An appropriate order accompanies this opinion.


/s/ JOEL A. PISANO
United States District Judge


Date: March 8, 2010